UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERIC GIVENS,<br>    *Plaintiff* | CIVIL ACTION<br>NO. 25-1294 |
| VERSUS | SECTION: "R" (1) |
| LAFOURCHE PARISH GOVERNMENT,<br>    *Defendant* | |

ORDER AND REASONS

This is an employment discrimination case. The defendant has filed a motion to dismiss on several grounds. The Court finds some of plaintiff's claims time barred, some barred by a failure to exhaust administrative remedies, but others sufficiently plead. Accordingly, the defendant's Motion to Dismiss (Rec. Doc. 15) is GRANTED in part and DENIED in part.

Background

Plaintiff Eric Givens is an African American who began working for the Lafourche Parish Government (the "Parish") as an Equipment Operator/Truck Driver II in 2019. He claims he was qualified for promotion to Equipment Operator III ("EO3"), yet after he interviewed for an EO3 vacancy in January 2022, a "less qualified white employee, 'Sunny'" was awarded the job. He alleges that in the summer of 2022, he applied for another EO3 vacancy, but it was again filled by a "less qualified white employee."

Givens alleges further that "[a]round Fall 2022," he reported that white supervisor Darren Theriot stated that White employees would be EO3 and Black employees would perform manual labor. But Human Resources took no corrective action.

Around October or November 2022, Givens applied for a posted EO3 position. But Theriot terminated the interview, stating it was for a "van truck" position instead of an EO3 role. Givens

1

claims that a less qualified White coworker, Damon Larson, told Givens that he had been given the job.

Givens complains that Theriot issued him a "drainage writeup" in December 2022, indicating that he was not working. But Givens alleges that Theriot was not working at the time and that he allowed a White coworker to use a company truck on company time to complete his personal insurance at the same time without issuing a writeup. Givens opposed this writeup with Human Resources and it was dismissed.

Givens complains that he received a "destruction of property" writeup in March 2023, but that the Parish never contacted him during the investigation. The Parish concluded that he had driven through the property of a customer and caused damage even though he had photos indicating the tracks on the property were not his. Givens claims that his supervisor, Mr. Alford (who is Black) told him that he was forced to write Givens up by Regional Supervisor Troy Babin and the White director of Human Resources, Dillon.

Givens filed a charge of discrimination with the Equal Employment Opportunity Commission on June 29, 2023. Therein, he alleges as follows:

> I have been discriminated against because of my Race-Black/African American and Harassment in that I was retaliated against after reporting Darren Theiort, Supervisor to Ms. Savonye, Human Resources, that Darren made comments such as, the manual labor is for the blacks, them to be the equipment operators, meaning whites; also, would allow Caucasian employees to do the same job differently than black employees. After nothing was done about my complaint, I was later interviewed for Operator III position by the same Supervisor, Darren, and was not selected, Damion Larson, Caucasian was selected.

Rec. Doc. 15-2. For the dates that discrimination took place, he listed April 23, 2023, as both the earliest and latest date. Id.

Givens alleges that in August 2023, the same day he participated in the EEOC mediation, the Parish forced him to undergo an unscheduled hair-sample drug test. He alleges that such tests

are rarely done at this workplace. He claims that Ms. Anderson in Human Resources told him that the EEOC mediator told her that the Parish could conduct the drug test. He submits this statement is false.

During the remainder of 2023 and early 2024, Givens alleges that Human Resources staff held three to five closed-door meetings in which they pressured him to recant his discrimination complaints and suggested he resign.

Givens was written up for refusing a task in December 2023. But he claims that a White employee had refused the same task without consequence only minutes earlier. He admits that Human Resources later rescinded the write up.

Givens claims that in April 2024, the Parish selectively used GPS data to suspend him. But, he alleges, the Parish did not discipline his White coworkers for what he describes only as "similar or worse conduct."

In June 2024, Givens received another writeup following a purported complaint by a farmer who stated that Givens was asleep on his phone for two hours. The writeup included seven offenses. Givens defended the claims through a hearing with the Board and all but one of them was rescinded. Givens claims the farmer then denied making the complaint.

Givens alleges that on August 20, 2024, he "was again passed over for EO3 despite his qualifications." He submits that the Parish cited rescinded discipline and allegations of insubordination contrary to the findings of Human Resources to disqualify him.

He alleges that in late 2024, he and another Black employee were finalists for an EO3 position, but neither was selected. Instead, the position was awarded to a White employee "who wanted to step down from his position."

Givens complains that the Parish engaged in an ongoing pattern of issuing unwarranted writeups and then using them to block his promotion. Additionally, he submits the writeups were used to negatively impact his evaluations, which went from 90/100 to 40/100.

The EEOC issued a Notice of Right to Sue on April 4, 2025, and Givens filed this lawsuit on June 25, 2025. His Amended Complaint filed in October 2025 alleges claims for Race Discrimination (Disparate Treatment) in violation of Title VII of the Civil Rights Act of 1964, Retaliation in violation of Title VII, and Hostile Work Environment in violation of Title VII. His prayer for relief includes a request for "punitive damages as allowed by law."

The Parish has filed a Motion to Dismiss. It argues that any claims arising out of conduct prior to September 2, 2022 (that is, 300 days before he filed his EEOC charge) are prescribed. It argues that the continuing violation doctrine is not available because the alleged denied promotions occurring before September 2, 2022, are discrete acts of alleged discrimination. The Parish argues further that some of the claims that Givens raises in his complaint are outside the scope of his EEOC charge and that, as a result, he has not exhausted his administrative remedies with regard to them. Specifically, it says that his EEOC charge did not include any claim related to a failure to promote prior to the alleged comments of Theriot in the Fall of 2022 and the October/November 2022 application. It argues further that the claims related to writeups in December 2022 and March 2023 are not contained within the scope of the EEOC charge.

Additionally, the Parish argues that Givens has failed to allege sufficient facts to state a claim for failure to promote because he has not alleged that Theriot (who allegedly made race-based comments about awarding positions) was the decision maker or influenced the decisions not to promote him. Further, the Parish points out that Givens has failed to allege the qualifications for the EO3 position, how he was qualified, or how the White employees were less qualified. And as

to the 2024 positions, the Parish submits that Givens has not alleged that he even applied for them.

Finally, the Parish argues that punitive damages are not available against it because it is a political subdivision. It argues Givens' claim for punitive damages must be dismissed.

To the extent the Court is inclined to allow Givens another opportunity to amend, the Parish argues that such amendment would be futile as to its timeliness and punitive damages arguments. It also lists instances of what it argues are vague and ambiguous allegations and requests that if the Court is not inclined to dismiss the complaint, it should order Givens to provide a more definite statement of his claims.

Givens opposes. He insists that the evidentiary detail demanded by the Parish is not required by Federal Rule of Civil Procedure 8. He insists he has plausibly alleged his failure to promote claims by alleging his repeated applications for EO3 positions and the consistent selection of less-qualified White employees along with direct evidence of discriminatory animus in Theriot's statement. With regard to alleged acts prior to September 2, 2022, Givens insists those acts are not barred from consideration. He submits they can provide background evidence to illuminate motive and pattern for timely claims. Further, he argues that his claims fall within the scope of his EEOC charge because any reasonable EEOC investigation would have examined the entire pattern of conduct, promotion denials, racially biased remarks, selective discipline, and retaliation he alleges in his Complaint. Givens also submits that he has stated a valid retaliation claim arising out of the unprecedented hair-sample test within days of the EEOC mediation followed by a series of disciplinary writeups and the August 2024 promotion denials. He argues that he has stated a clear claim for a hostile work environment supported by Theriot's racially derogatory remarks, the denied promotions, and the excessive discipline. He insists these are more than minor workplace irritations. Finally, he agrees that he cannot obtain punitive damages against

the Parish and withdraws this demand. And, to the extent the Court is inclined to dismiss his Complaint, he requests leave to amend.

The Parish has not filed a reply memorandum.

Law and Analysis

1. *Standard on Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." Id. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000). The Fifth Circuit has recognized that the court may also consider documents attached to a motion to dismiss by the defendant if they are referred to in the plaintiff's complaint and central to his claim. Id. at 498-99; see Walch v. Adjutant General's Dep't of Tex., 533 F.3d 289, 293–94 (5th Cir. 2008) (considering exhibits attached to an opposition because "[n]o party questions the authenticity of these two documents and both were sufficiently referenced in the complaint to permit their consideration on a motion to dismiss"). For example, in Carter v. Target Corp., the court held that the district court was permitted to consider the EEOC charges attached to the defendant's motion to dismiss because they were referenced in the plaintiff's complaint and were central to plaintiff's claim. 541 F. App'x 413, 417 (5th Cir. 2013).

2. *Timeliness*

Title VII requires that a plaintiff must file his charge with the EEOC within 300 days after the alleged unlawful employment practice occurred in cases like this one where the plaintiff first filed his charge with the applicable state employment agency. 42 U.S.C. §2000e-5(e)(1). "[D]iscrete discriminatory acts" outside this time period are barred, even if "they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, (2002). But this rule does not prevent "an employee from using the prior acts as background evidence in support of a timely claim." Id. Additionally, hostile work environment claims are subject to the "continuing violation doctrine," such that "[a]s long as 'an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" Heath v. Bd. of Supervisors for

7

S. Univ. & Agric. & Mech. Coll., 850 F.3d 731, 737 (5th Cir. 2017), as revised (Mar. 13, 2017).

The Parish argues that Givens' claims for failure to promote arising out of the January 2022 vacancy and the summer 2022 vacancy are time barred along with any claim arising out the alleged statements by Theriot in Fall 2022 about only white employees being EO3 to the extent such statement occurred after before September 2, 2022. Givens does not seem to oppose this argument. Instead, he submits that earlier promotion denials and discriminatory statements remain probative of the Parish's continuing bias and provide relevant background.

The Court agrees that Givens' claims for disparate treatment discrimination arising out of the denied promotions in January 2022 and Summer 2022 are time barred. To the extent Givens is attempting to raise such claims, they are dismissed. As to the alleged Fall 2022 statement, considering that fall begins in late September, the Court cannot now find that claims related to the statement are time barred. Further, the pre-September 2022 factual allegations may remain part of the Complaint as potentially relevant background.

3. *Exhaustion of Administrative Remedies*

Title VII requires that a plaintiff file a charge with the EEOC prior to filing suit. Ernst v. Methodist Hosp. Sys., 1 F.4th 333, 337 (5th Cir. 2021). "To satisfy exhaustion, a claim generally must arise out of the plaintiff's EEOC charge." Id. Thus, "[t]he scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Carey v. State of Louisiana, No. CIV.A. 00-2657, 2001 WL 1548962, at *5 (E.D. La. Dec. 5, 2001) (quoting Thomas v. Texas Dep't of Criminal Justice, 220 F.3d 389, 395 (5th Cir. 2000)). In light of the remedial purposes underlying Title VII, courts "construe employment discrimination charges with the 'utmost liberality,' bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading." Price v. Sw.

Bell Tel. Co., 687 F.2d 74, 78 (5th Cir. 1982). Plaintiff may base his claim "not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations." Fellows v. Universal Restaurants, Inc., 701 F.2d 447, 451 (5th Cir. 1983).

For example, in Fine v. GAF Chemical Corp., the plaintiff's charge of sex discrimination alleged the employer had failed to hire her as an apprentice chemical operator and that her latest application occurred in February 1990. 995 F.2d 576, 577 (5th Cir. 1993). During the litigation, she claimed she had also been discriminated against in October and November 1990 when she orally applied for a plant manager job and three men were hired instead. Id.  The court of appeals found that the plaintiff's EEOC charge "drew the EEOC's attention to an application she allegedly made in February 1990, and referred to events even further in the past" and that, as a result, the later October/November 1990 events "could not reasonably be expected to be within the scope of the EEOC investigation." Id. at 578.

In contrast, the Fifth Circuit in Gamble v. Birmingham Southern Railroad Co. found that the black switchmen's claims that they had not been allowed to promote to the position of supervisor should have been considered by the district court, even though the EEOC charge only mentioned the claim that they had not been allowed to promote to conductor because of race. 514 F.2d 678, 687-89 (5th Cir. 1975). The court of appeals found that because the evidence showed that all supervisors were chosen from the conductor roster and no black person had reached the supervisory level, the EEOC charge that the employees were not allowed to promote to conductor based on race implicitly included the complaint that they were not allowed to promote to supervisor. Id.  at 689.

9

Givens' EEOC charge alleges harassment and retaliation resulting from the alleged Fall 2022 statement by Theriot. He also alleges that the Parish "would allow Caucasian employes to do the same job differently than black employees." He alleges that he reported Theriot's statement (and possibly the disparate treatment) to Human Resources but nothing was done about his complaint. He also alleges that he was not selected for the EO3 position that was given to Larson.

The Parish points out that the charge does not include any reference to the alleged failure to promote in January 2022 and Summer 2022. As noted above, those claims are being dismissed as untimely.

The Parish submits further that the charge does not include any reference to the December 2022 drainage writeup or the March 2023 destruction of property writeup. It adds that Givens identified April 23, 2023, as the earliest date of discrimination. It argues that Givens' claims related to the December 2022 and March 2023 writeups are outside the scope of his EEOC charge.

Givens responds that because he alleged race-based mistreatment, any reasonable EEOC investigation would have examined the entire pattern of conduct, including selective discipline and retaliation following the EEOC mediation.

The Court finds that Givens' claims concerning the December 2022 and March 2023 writeups would have grown out of his EEOC charge. In his Complaint, he claims that he was issued the December 2022 writeup for not working when Theriot allowed a white coworker to complete personal errands using a company truck on company time. He claims the March 2023 destruction of property writeup was issued even though he was not contacted during the investigation and his supervisor admitted he was forced to issue the writeup by the regional supervisor and Dillon, the White director of human resources. Although Givens does not explicitly mention these writeups in the EEOC Charge, he does allege race-based discrimination and

10

retaliation. Importantly, he claims that the Parish (possibly Theriot) would allow White employees to perform the same job differently than Black employees. The Court finds that a reasonable EEOC investigation of Givens' claims of race-based discrimination and retaliation, including alleged disparate treatment in job performance requirements would have discovered and considered the allegedly discriminatory and retaliatory writeups. Accordingly, the Court finds Givens has exhausted his administrative remedies as to the December 2022 drainage writeup and the March 2023 destruction of property writeup.

4. *Failure to Promote Claims*

The Parish submits that:

> a plaintiff challenging a failure to promote must first establish a prima facie case demonstrating that "(1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race."

Stelly v. Dep't of Pub. Safety & Corr. Louisiana State, 149 F.4th 516, 522 (5th Cir. 2025) (quoting Autry v. Fort Bend Indep. Sch. Dist., 704 F.3d 344, 347 (5th Cir. 2013)). At the pleading stage, though, a plaintiff is not required to establish his prima facie case. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511 (2002). Instead, the plaintiff must plead the ultimate elements of his claim. Cicalese v. Univ. of Texas Med. Branch, 924 F.3d 762, 767 (5th Cir. 2019). "There are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* her protected status.'" Id. (quoting Raj v. Louisiana State Univ., 714 F.3d 322, 331 (5th Cir. 2013)).

Within the limitations period, Givens has alleged a failure to promote in November 2022 when Larson was given the position, in August 2024 when he was passed over for an EO3 position and the disciplinary actions were cited, and in late 2024 when he and another Black employee were

11

finalists but a white employee was selected.

The Parish argues that Givens' allegations are insufficient to state a claim because he does not allege what the qualifications for EO3 were, what the qualifications of the white employees were, and as to purported denied promotions in 2024, Givens does not even allege he applied. Givens insists his allegations are extensive and non-conclusory.

The Court finds that Givens has adequately alleged a claim for failure to promote in November 2022, August 2024, and late 2024. He alleges he applied for the EO3 position in October/November 2022 and that the position was given to the allegedly less qualified White coworker Damon Larson. He alleges that he was passed over for an EO3 position in 2024 and although he does not explicitly say he applied for the position, his allegation that the Parish provided a reason for his disqualification indicates, at this stage, that he did so. He alleges that he and another Black employee were finalists for a position in late 2024 but it was awarded to a White employee who wanted to step down from his position. Although he does not explicitly allege that he applied for this position, the allegation that he was a finalist is sufficient at this stage to indicate that he did so. At this stage he is not required to set forth all the evidence that would be needed to establish a prima facie case. The Court finds the allegations sufficient to state plausible claims for failure to promote.

5. *Retaliation Claims*

Givens argues in opposition that he has stated a valid claim for retaliation arising out of not only his internal complaint of race discrimination but also the filing of his EEOC charge in June 2023. The Parish has raised no arguments with regard to the retaliation claims (except as discussed above with regard to administrative exhaustion and the December 2022 and March 2023 writeups). Accordingly, the Court does not now consider whether Givens has stated a plausible

claim for retaliation.

    6. *Hostile Work Environment*

Givens argues in opposition that he has stated a valid claim for hostile work environment.[1] The Parish has raised no arguments with regard to the hostile work environment claim aside from the timeliness arguments discussed above. Accordingly, the Court does not now consider whether Givens has stated a plausible claim for hostile work environment.

    7. *Punitive Damages*

The Parish argues that punitive damages are not available because it is a political subdivision. See 42 U.S.C. § 1981a ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."). Givens recognizes this principle and has agreed to voluntarily withdraw his punitive-damages demand. Accordingly, the Court hereby strikes Givens' demand for punitive damages from the Amended Complaint.

## Conclusion

For the foregoing reasons, the Parish's Motion to Dismiss (Rec. Doc. 15) is GRANTED in part and DENIED in part:

- Givens' claims for discrimination arising out of the January 2022 and Summer 2022 promotions are DISMISSED as time barred.

- Givens' remaining claims for discrimination, retaliation, and hostile work environment shall be allowed to proceed.

---

[1] The Court notes that it appears Givens' hostile work environment claim is based on the same incidents that he claims are racially discriminatory or retaliatory.

13

- Givens' demand for punitive damages is STRICKEN from the Amended Complaint.

New Orleans, Louisiana, this 10th day of November, 2025.

                                                                              Janis van Meerveld
                                                      United States Magistrate Judge